UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:21-CV-00089-JHM

MARK CLINTON JOHNSON                                                                      PLAINTIFF

V.

ALEX PIPER, *et al.*                                                                      DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Alex Piper, *et al.*'s Motion for Summary Judgment. [DN 34]. Fully briefed, this matter is ripe for decision. For the following reasons, the Defendant's Motion is **GRANTED**.

**I. BACKGROUND**

On October 29, 2020, Plaintiff Mark Clinton Johnson ("Mr. Johnson") was sentenced to 60 days in jail by the Muhlenberg (Kentucky) District Court. In lieu of traditional incarceration, the Commonwealth agreed to allow Mr. Johnson to serve 120 days of home incarceration. [DN 27-1]. Pursuant to the Order granting home incarceration, Mr. Johnson agreed to, among other things, wear an ankle monitor and "[c]onsent to law enforcement requests for any probable cause searches of his residence." [DN 34-1 at 2].

Deputies from the Muhlenberg County Sheriff's Department executed a search on Mr. Johnson's residence on January 18, 2021, believing there was stolen property on the premises. [DN 7]. Their belief was based on statements from multiple witnesses that Mr. Johnson had stolen property from their residences, ankle-monitor data which showed that Mr. Johnson had been at the witnesses' residences, photographic evidence showing Mr. Johnson at one of the residences, and

their own observations of some of the stolen property in question outside Mr. Johnson's residence in plain view. [DN 34-1]. When they arrived, the deputies knocked on the door, but despite knowing that the Sheriff's Department was at his residence, Mr. Johnson did not let them in. [DN 1 at 4]. The deputies eventually forced their way into the residence by breaking the screen door, reaching around, and unlocking the door from the inside. [*Id.*; DN 7 at 4; DN 40 at 2]. Upon entering the property, the deputies "took many things on the inside and outside of [Mr. Johnson's] place." [DN 7]. Mr. Johnson was then "charged with a crime and arrested . . . ." [*Id.*]. He was subsequently convicted of burglary based largely on evidence seized during this search. [DN 27-2; DN 34-1 at 11]. That conviction is currently in force and pending appeal, and Mr. Johnson remains in custody. [DN 34-1 at 10–11].

Mr. Johnson filed a *pro se* Complaint and Amended Complaint against Defendants Alex Piper, Josh Beatty, Wade Shoemaker, and Will Ward in their individual and official capacities, alleging that his Fourth Amendment right to be free from unreasonable searches and seizures had been violated. [DN 1; DN 7]. Upon completion of its initial screening of the Complaint and Amended Complaint pursuant to 28 U.S.C. § 1915A, the Court dismissed the official capacity claims but permitted the individual capacity claims to continue. [DN 8]. Johnson later moved for summary judgment, again claiming that Defendants violated his Fourth Amendment right to be free from unreasonable searches and seizures. [DN 25]. This motion was denied. [DN 29]. After gaining leave from the Court to file a dispositive motion after the deadline, [DN 31], Defendants filed their own Motion for Summary Judgment. [DN 34].

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-movant must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings, and a party's "status as a pro se litigant does not alter his duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010). However, statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg*

3

*v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

### III. DISCUSSION

*A. Mr. Johnson's Claims are Barred by the* Heck *Doctrine*

Under *Heck v. Humphrey*, 512 U.S. 477 (1994), a state prisoner cannot prevail in a § 1983 action "if success in that action would necessarily demonstrate the invalidity of confinement or its duration," unless that conviction has been invalidated. *Wilkerson v. Dotson*, 544 U.S. 74, 82 (2005) (emphasis removed); *Heck*, 512 U.S. at 486. The conviction must have been invalidated by being "reversed on direct appeal, expunged by executive order, declared invalid by a[n] [authorized] state tribunal . . . , or called into question by . . . a [federal] writ of habeas corpus, 28 U.S.C. § 2254." *Heck*, 512 U.S. at 486–87. "[C]ivil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.* at 486. This principle holds true whether the plaintiff seeks damages or equitable relief. *Wilkerson*, 544 U.S. at 82. Additionally, the Sixth Circuit has clarified that *Heck* applies to Fourth Amendment search and seizure claims. *Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir. 1995); *see also Shamaeizadeh v. Cunigan*, 182 F.3d 391, 396, 398 (6th Cir. 1999) (extending the logic of *Heck* and *Schilling* to also bar § 1983 claims that would imply the invalidity of a *future* conviction, holding that indicted defendants cannot bring § 1983 claims—and the statute of limitation on them does not start to run—until the charges are dismissed).

Here, Mr. Johnson alleges that the search that led to his arrest and conviction was unconstitutional. [DN 7]. If Mr. Johnson were correct, much of the evidence that the Commonwealth needed to convict him likely should have been suppressed. [*See* DN 34-1 at 11 (stating that seizure of allegedly stolen property during the search led to the conviction)]. Mr.

4

Johnson is essentially challenging his criminal conviction's validity. The appropriate place for Mr. Johnson to do this is in the Kentucky state courts, including through his pending appeal. [*See* DN 34-1 at 10–11]. Even if meritorious, Mr. Johnson's claims are barred by *Heck* unless he gets his conviction overturned.

Although Mr. Johnson's claims are barred, the Court will still discuss their merits in case his criminal conviction is ultimately invalidated.

B.  *Mr. Johnson's Fourth Amendment Claims Fail on the Merits*

When a search is executed "without a warrant issued upon probable cause," it is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). One exception is consent. *Id*. The party that conducted the allegedly unlawful search or seizure has the burden of proving by a preponderance that consent was "freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968); *United States v. Worley*, 193 F.3d 380, 385 (6th Cir. 1999). Voluntariness of consent must be determined from all the surrounding circumstances. *Schneckloth*, 412 U.S. at 248–49. Furthermore, the Supreme Court has held that a warrantless search of a probationer's home does not violate the Fourth Amendment if such a search is authorized as a condition for release from confinement. *United States v. Knights,* 534 U.S. 112, 122 (2001). This holds true even when the search is not probation-related and the trigger for the search is only reasonable suspicion instead of probable cause. *Id.*; *see also United States v. Yeary*, 740 F.3d 569, 575–76 (11th Cir. 2014) (no constitutional violation when officers conducted warrantless search of defendant's home based on an agreement consenting to searches of his residence as a condition of "in-house arrest"). Such searches are lawful because probationers have diminished privacy expectations compared to other citizens, and parolees have even lower expectations than

probationers. *United States v. Fletcher*, 978 F.3d 1009, 1018 (6th Cir. 2020); *see Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987) ("[P]robationers [and parolees] . . . do not enjoy the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions." (internal quotation marks omitted)). For constitutional purposes, a parolee is anyone who has been "release[d] from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972).

Here, the deputies gained Mr. Johnson's consent for all requested probable-cause searches of his home when Mr. Johnson signed the home incarceration order stating he agreed to said searches. [DN 27-1]. Mr. Johnson chose to accede to this and other conditions instead of spending sixty days in jail; there is no evidence that he did not make this decision voluntarily. [*Id.*; DN 34 at 1]. Mr. Johnson complains that the deputies were required by the home incarceration order to request to search his property and could not just barge in. [DN 40 at 1–2]. But in his complaint, Mr. Johnson says that the deputies knocked on his door. [DN 1 at 4]. Knocking constitutes a request for entry. He further states that even though he knew the Sheriff's Department was knocking on his door, he still did not let them in. [*Id.*]. While the Court can sympathize with the fear Mr. Johnson must have felt when the police were knocking on his door, the fact remains that he was legally obligated to let them in. [*See* DN 27-1]. When he did not do so, the deputies were within their rights to force their way in.

The deputies were also required by the home incarceration order to have probable cause before searching Mr. Johnson's residence. They unquestionably did. An officer possesses probable cause to search a property when "the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present" on said property.

6

*Florida v. Harris*, 568 U.S. 237, 243 (2013) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)) (internal markings omitted). "[T]he ultimate question of probable cause . . . in a civil case when the historical facts are undisputed is a question of law for the court and not a jury." *Gerics v. Trevino*, 974 F.3d 798, 805 (6th Cir. 2020). Here, the deputies relied on multiple eyewitness statements that Mr. Johnson had stolen personal property from their residences, photographic and ankle-monitor evidence that Mr. Johnson had been at said residences, and the deputies' own observations of some of the reportedly stolen property outside Mr. Johnson's home in plain view. [DN 27-2; DN 27-3; DN 27-4]. Any one of these pieces of evidence alone would likely make a reasonable person believe that Mr. Johnson possessed stolen property and kept it his home. Taken together, they leave no doubt that the deputies had probable cause to search the residence.

Mr. Johnson also contends that the search was unjustified because he was not on parole or probation. [DN 1 at 4; DN 25 at 1]. But this is a half-truth; he was under house arrest. [DN 27-1]. Mr. Johnson acknowledges that his home incarceration order was in force and that he had to abide by its rules. [DN 40 at 3]. His home incarceration allowed him to serve his sentence outside of jail so long as he adhered to certain conditions, making him a parolee for constitutional purposes. [DN 27-1]; *see Morrisey*, 408 U.S. at 471. The Supreme Court has made it clear that officers can search parolees' homes without a warrant if allowing warrantless searches is a condition of their release from confinement. *Cf. Knights*, 534 U.S. at 122.

C. *Mr. Johnson's Claims are Barred by Qualified Immunity*

Qualified immunity protects government officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, or the district court itself, or case law from other circuits which is directly on

7

point." *Barrett v. Harrington,* 130 F.3d 246, 264 (6th Cir.1997) (internal citations omitted). The Court has not found any statutes or cases from any U.S. jurisdiction that state that police officers cannot search a residence if they have probable cause and consent to such searches was a condition of the occupant's home confinement. Even if Mr. Johnson's claims were meritorious, they would be barred by qualified immunity.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, [DN 34], is **GRANTED**.

*Joseph H. McKinley Jr., Senior Judge*
United States District Court

October 13, 2022

cc: Mark Clinton Johnson, *pro se*
Counsel of Record